UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

                     Plaintiff,

          -against-

ESTHER ADLER O'KEEFE, DAVID
ADLER, WILLIAM ADLER, AND ROSARY
LIOTTA ADLER,

                     Defendants.
------------------------------------------------------------- X

**REPORT & RECOMMENDATION**
25-CV-2725 (EK) (SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiff Northwestern Mutual Life Insurance Company brings this action under the federal interpleader statute, 28 U.S.C. § 1335, in connection with competing claims to benefits of a life insurance policy by Defendants Rosary Liotta Adler, Esther Adler O'Keefe, David Adler, and Dr. William Adler.  Pending before the undersigned, on referral from the Honorable Eric R. Komitee, United States District Judge, is Plaintiff's motion for interpleader relief.

For the reasons explained herein, the undersigned respectfully recommends that the Court grant Northwestern Mutual's motion, direct it to deposit the policy benefits with the Court's registry, discharge Northwestern Mutual from liability, enjoin Defendants from initiating any other proceedings regarding the policy benefits, and dismiss Northwestern Mutual from this proceeding. The undersigned also respectfully recommends that the Court grant Northwestern Mutual's request to make a formal fee application.

**FACTUAL BACKGROUND**

The following facts are taken from the Complaint and the parties' briefing.  Marvin Adler (the "Insured") obtained a life insurance policy from Northwestern Mutual in 1997.  (Compl.

¶¶ 19–20.)  The policy at that time named the Insured's wife, Defendant Rosary Liotta Adler, as direct beneficiary, along with his then two children and grandchild as contingent beneficiaries. (*Id.* ¶ 22.)

The Insured lived with Defendant Rosary Liotta Adler for around 28 years.  (*See* Defendant Rosary Liotta Adler's Amended Answer, Dkt. No. 24 ¶¶ 110–112.)  On October 16, 2024, the Insured moved in with his daughter, Defendant Esther Adler O'Keefe.  (Reply in Support of Motion for Interpleader Deposit ("Reply"), Dkt. No. 49 p. 1.)  Nine days later, Defendant Rosary Liotta Adler sent an email to Northwestern Mutual describing a conflict between her and Defendant Esther Adler O'Keefe and "putting [Northwestern Mutual] on notice" that any directions to change beneficiaries on the Insured's life insurance policy or to withdraw money from his account should not be honored due to alleged fraud and elder abuse by Defendant Esther Adler O'Keefe.  (Email dated Oct. 25, 2024, Dkt. No. 48 Ex. D p. 4.)  Defendant Rosary Liotta Adler also provided to Northwestern Mutual a power of attorney executed in 2019 naming her as the Insured's attorney-in-fact.  (*See* Reply Exs. A & D, Dkt. Nos. 49-1, -4.)  Northwestern Mutual discussed these communications with its special investigation unit ("SIU").  (Reply p. 2.)

On October 28, 2024, Defendant Esther Adler O'Keefe called Northwestern Mutual.  She said she was the Insured's attorney-in-fact, that the Insured was with her, and that she wanted to help him change the beneficiary on his life insurance policy.  (Compl. ¶¶ 23–24; Defendant Rosary Liotta Adler's Opposition (Opp."), Dkt. No. 47 pp. 2–3; Reply pp. 2–3; *see also* Unofficial Transcript of Call by Esther Adler O'Keefe to Northwestern Mutual ("Call Tr."), Dkt. No. 48 Ex. C.)  She alleged that Defendant Rosary Liotta Adler and her children had abused and taken money from the Insured.  (Call Tr. p. 1.)  The Northwestern Mutual representative on the call first shared with Defendant Esther Adler O'Keefe an email address where she could send the Insured's

2

power of attorney for review. (*Id.* p. 2.) Defendant Esther Adler O'Keefe then put the Insured on the phone. (*Id.* p. 3.) The Insured verified to the Northwestern Mutual representative the last four digits of his social security number, his date of birth, and his address. (*Id.*)

The Northwestern Mutual representative asked the Insured if he wanted to update his beneficiary. (*Id.*) After a few seconds passed, Defendant Esther Adler O'Keefe asked the Northwestern Mutual representative to speak louder because the Insured was hard of hearing and without his hearing aids. (*Id.* pp. 3–4.) After switching to speakerphone, the representative identified the current individuals listed as beneficiaries of the policy and asked the Insured for his permission to change them. (*Id.* p. 4.) The insured confirmed that he wanted to remove his spouse as the direct beneficiary. (*Id.*) Defendant Esther Adler O'Keefe told the Insured to make the new direct beneficiary Defendant David Adler, which the Insured agreed to do. (*Id.*) The Insured then said his other two children, Defendants Dr. William Adler and Defendant Esther Adler O'Keefe, should also be beneficiaries. (*Id.*) The Northwestern Mutual representative confirmed with the Insured that his new direct beneficiaries should be his children Defendants David Adler, Esther Adler O'Keefe, and Dr. William Adler. (*Id.* p. 5.)

The Northwestern Mutual representative then explained the effects of this change— *i.e.*, that it would revoke any benefits to prior beneficiaries and that any death proceeds would instead be paid to the new beneficiaries. (*Id.*) The Northwestern Mutual representative asked for final confirmation from the Insured to proceed with changing the beneficiaries, which the Insured gave. (*Id.* p. 6.)

Ten days later, on November 7, 2024, Northwestern Mutual received paperwork relating to the Insured's life insurance policy, including a document signed by the Insured revoking Defendant Rosary Liotta Adler as his attorney-in-fact, and a power of attorney executed before a

3

notary on October 18, 2024 naming Defendant Esther Adler O'Keefe as the Insured's attorney-in-fact. (*See* Reply Ex. C.)  Northwestern Mutual reviewed these issues and again referred them to its SIU.  The SIU found that the Insured likely had the ability to act on his own but noted concern with the competing allegations of misconduct by Defendants Rosary Liotta Adler and Ether Adler O'Keefe.  (*Id.* p. 3.)  Accordingly, Northwestern Mutual determined that no loans or surrender of benefits could be done by phone and instead needed to be done in writing.  (*Id.* p. 4.)

The Insured passed away on December 26, 2024.  (Compl. ¶ 27.)  At that time, the death benefit under the policy was approximately $131,379.  (*Id.* ¶ 21; Motion for Interpleader Deposit ("Mot."), Dkt. No. 40-1 p. 3.)  Defendant Rosary Liotta Adler and, separately, Defendants Esther Adler O'Keefe and her siblings, David Adler and Dr. William Adler, notified Northwestern Mutual of the Insured's death and each claimed they were rightful beneficiaries.  (Compl. ¶ 31.) Northwestern Mutual notified both groups of Defendants on January 15 and 16, 2025 that they had made competing claims to the benefits and that it would withhold payment for 65 days to gather additional information and give Defendants the opportunity to resolve the dispute among themselves.  (*See id.* ¶ 32.)  Defendants did not resolve the dispute.  Instead, both groups of Defendants obtained counsel and contacted Northwestern Mutual multiple times through April 2025 to claim entitlement to the policy benefits and threaten legal action.  (*See id.* ¶¶ 33–36.)

## PROCEDURAL BACKGROUND

Northwestern Mutual initiated this action on May 15, 2025.  (*See* Compl.)  The company alleges it is an innocent and disinterested stakeholder and, in light of the competing claims and risk of liability, seeks a judgment pursuant to the federal interpleader statute, 28 U.S.C. § 1335, discharging it from liability and determining Defendants' respective rights to the policy benefits. (*See* Compl. ¶¶ 42–44.)  In their answer to the Complaint, Defendants Esther Adler O'Keefe and

4

David Adler asserted cross claims against Defendant Rosary Liotta Adler. (*See* Defendant Esther Adler O'Keefe's Amended Answer, Dkt. No. 20; Defendant David Adler's Answer, Dkt. No. 21.)

This action was then delayed by a combination of administrative and scheduling developments. When the initial conference was finally held on November 12, 2025, the undersigned encouraged the parties to continue efforts to resolve their dispute and offered to either hold a settlement conference or refer the parties to court-sponsored mediation. (*See* Transcript of Nov. 12, 2025 Hearing ("Nov. 12 Tr."), Dkt. No. 38 at 10:10–11:2.) Northwestern Mutual did not object, but, because it viewed this case as a dispute among Defendants, said it likely wouldn't participate in settlement discussions and would instead move for interpleader relief. (*See id.* at 11:7–15.) Defendants also indicated they likely were not all open to settling.[1] (*See id.* at 12:1–6.) Accordingly, the Court set discovery deadlines and scheduled a status conference. (Minute Entry dated Nov. 12, 2025.)

Northwestern Mutual filed its interpleader motion on December 17, 2025. (*See* Mot.) The company's motion alleged it had satisfied the jurisdictional requirements of the federal interpleader statute and was thus entitled to an order discharging it from all further liability, permanently enjoining Defendants from suing it in connection with the policy benefits, and dismissing it from the case. (*See id.* pp. 3–6.) Northwestern Mutual also sought to recover costs and fees incurred in connection with bringing this action. (*See id.* p. 6)

Defendant Rosary Liotta Adler filed her opposition to Northwestern's motion on January 31, 2026 claiming, *inter alia*, that Northwestern Mutual is not an innocent, disinterested stakeholder and should not be discharged. (*See* Opp pp. 7–8.) Specifically, Defendant Rosary

---

[1] Defendant Dr. William Adler, who has elected to proceed *pro se*, was excused from attending the initial conference after he informed the Court he was unavailable on the scheduled date. (*See* Letters, Dkt. Nos. 34, 35.)

Liotta Adler maintains that she may have independent claims against the company for processing the beneficiary change despite the many red flags raised under the circumstances. (*See id.* pp. 7–13.)

The undersigned heard argument on Plaintiff's motion at a February 11, 2026 hearing. (Minute Entry dated Feb, 13, 2026, Dkt. No. 50; *see also* Transcript of Feb. 11, 2026 Hearing ("Feb. 11. Tr."), Dkt. No. 51.)  At that hearing, Defendants Esther Adler O'Keefe, David Adler, and Dr. Wiliam Adler confirmed that they do not oppose Plaintiff's interpleader motion.  (*See* Feb. 11 Tr. at 16:18–18:16.)  Defendant Rosary Liotta Adler clarified that she does not oppose the depositing of the funds requested by Northwestern Mutual—only their discharge from liability, dismissal from this action, and requests for an injunction and fee award.  (*See* Feb. 11. Tr. at 7:24–8: 21; Opp. p. 14.)  As such, all parties consent to the motion except for Defendant Rosary Liotta Adler.

## LEGAL STANDARD

An interpleader action is a civil lawsuit by which an interpleader plaintiff holding money or property claimed by multiple parties can avoid liability and determine which party's claims are valid.  *See Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) ("[I]nterpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit.").  Generally, an interpleader action is conducted in two stages.  In the first stage, a court determines whether interpleader is appropriate, and, if it finds the action is appropriate, discharges the interpleader plaintiff from liability.  In the second stage, the court adjudicates the claims among the remaining adverse parties.  *See, e.g.*, *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983).

6

In the first stage, a court determines if interpleader is appropriate by evaluating whether the interpleader plaintiff has satisfied the jurisdictional requirements in 28 U.S.C. § 1335. *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013). As an initial matter, a federal court only has jurisdiction over an interpleader action where minimal diversity exists between the claimants—*i.e.*, where there are "[t]wo or more adverse claimants, of diverse citizenship." 28 U.S.C. § 1335. Section 1335 then requires an interpleader plaintiff to allege that it is in possession of a single fund of value greater than $500 and that it faces "a real and reasonable fear of double liability or vexatious, conflicting claims" against that fund. *See, e.g.*, *Fidelity Brokerage*, 192 F. Supp. 2d at 178. During this first stage, "a court need not analyze the merits of the claims because '[t]he stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.'" *Id.* (quoting *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953)). Finally, a plaintiff must deposit the fund at issue with the court. 28 U.S.C. § 1335(a)(2).

Beyond these jurisdictional requirements, a risk of multiple liability is the "primary test for determining the propriety of interplead[er]." 7 Wright & Miller's Fed. Prac. & Proc. § 1704 (3d. ed. 2025). But some courts also traditionally look to other criteria, including whether the stakeholder is a neutral, disinterested party not independently liable to any claimants, and whether the action was brought in bad faith. *See id.* §§ 1704, 1706, 1709. If the stakeholder may be liable to a claimant on some other basis, there is a question whether interpleader relief is appropriate, since the stakeholder would benefit by avoiding the independent claim. *See id.* § 1706. However, the "judicial trend" seems to be to allow interpleader relief despite independent liability. *Id.* n.10 (collecting cases); *see also William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (potential additional liability of stakeholder life insurer on counterclaims for

promissory estoppel or reliance did not preclude exercise of interpleader jurisdiction over competing claims to policy funds).

Similarly, because interpleader is "fundamentally an equitable remedy," the interpleader plaintiff must come into court with clean hands. *William Penn*, 569 F. Supp. 2d at 362 (citing *Royal Sch. Labs., Inc. v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir. 1966)); *see also* 7 Wright & Miller's Fed. Prac. & Proc. § 1709 (3d. ed. 2025). If there are serious charges that the interpleader action was brought in bad faith, discharge of the interpleader plaintiff may be delayed or denied entirely. *N.Y. Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 96 (2d Cir. 1983).

If § 1335's jurisdictional requirements are satisfied, and no other concerns militate otherwise, a court should "readily" exercise its authority to discharge the interpleader plaintiff. *Mitchell*, 966 F. Supp. 2d at 103 (quoting 4 Moore's Federal Practice § 23.03[2][a] (3d ed. 2025)); *see also* 28 U.S.C. § 2361 (empowering district courts to "enter order[s] restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court").

### DISCUSSION

Northwestern Mutual's motion only seeks relief available in the first stage of adjudicating an interpleader action —*i.e.*, the stage at which the stakeholder holding funds claimed by multiple parties seeks to deposit the assets with the court and exit the dispute. To determine whether Northwestern Mutual is entitled to the relief it seeks at this stage, the undersigned first addresses whether Northwestern Mutual has met the jurisdictional requirements for interpleader relief, and then addresses Defendant Rosary Liotta Adler's assertion that Northwestern Mutual should not be

discharged because it was arguably negligent in approving the beneficiary change.  Finally, the undersigned addresses Northwestern Mutual's request for fees and costs.

## I.      Jurisdictional Requirements

The undersigned finds that, as the parties agree, the jurisdiction requirements of the interpleader statute are satisfied.  First, at least two Defendants with adverse claims are diverse. Although there are four total claimants, the three siblings Defendants' claims are not adverse to each other.  They assert that each of them is entitled to one-third of the policy proceeds, and that Defendant Rosary Liotta Adler is entitled to nothing.  (*See* Defendant Esther Adler O'Keefe's Amended Answer, Dkt. No. 20 ¶¶ 12–15; Defendant David Adler's Answer, Dkt. No. 21 ¶¶ 13– 15; Defendant Dr. William Adler's Answer, Dkt. No. 26 p. 2.)  Accordingly, to establish minimal diversity, at least one of the sibling claimants must be diverse from Defendant Rosary Liotta Adler—the only other claimant they oppose.

Each of the three sibling Defendants is a citizen of a different state.  Esther Adler O'Keefe is a citizen of New York, David Adler is a citizen of Texas, and Dr. William Adler is a citizen of New Mexico.  (*See* Compl. ¶¶ 12–15; Defendant Esther Adler O'Keefe's Amended Answer, Dkt. No. 20 ¶¶ 3–6; Defendant David Adler's Answer, Dkt. No. 21 ¶¶ 3–6; Defendant Dr. William Adler's Answer, Dkt. No. 26 ¶ 3.)  Defendant Rosary Liotta Adler's citizenship is unclear, since she "lacks knowledge or information sufficient to form a belief" as to the Complaint's allegation that she is a citizen of New York and does not claim any other citizenship.  (Defendant Rosary Liotta Adler's Amended Answer, Dkt. No. 24 ¶ 16.)  Nevertheless, no matter where she is a citizen, minimum diversity as contemplated under § 1335 is established here because the adverse parties reside in three different states, whereas Defendant Rosary Liotta Adler can only have one state of citizenship. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("An individual's

9

citizenship, within the meaning of the diversity statute, is determined by his domicile. . . .  At any given time, a person has but one domicile").  Even if she shares citizenship in New York, Texas, or New Mexico with one of the sibling Defendants, she will still be diverse from the two other sibling Defendants.

The other jurisdictional requirements are also satisfied.  The $131,379 value of the policy benefits exceeds the $500 jurisdictional amount.  (*See* Compl. ¶ 21; Mot. p. 3.)  Further, by describing rival threats to sue by both Defendant Rosary Liotta Adler and the sibling Defendants, Northwestern Mutual reasonably alleges a risk of multiple liability.  *See William Penn*, 569 F. Supp. 2d 355 at 362 ("If defendants were to proceed against [the interpleader plaintiff] in separate actions, there would be a risk of multiple and inconsistent liabilities on a single obligation. . . .  This is the sort of unjustified multiple liability that interpleader exists to prevent.") Finally, Northwestern Mutual has sufficiently demonstrated its intent to deposit the $131,379 into the Court's registry.  *See N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 720–21 (E.D.N.Y. 2012) (granting interpleader relief when life insurance company "properly filed this action with the intent to deposit the disputed funds into court").  As such, all jurisdictional prerequisites are met.

## II.    Independent Liability & Bad Faith

Defendant Rosary Liotta Adler objects to discharging Northwestern Mutual because she alleges that she is entitled to bring claims of independent liability against the company.  (*See* Opp. pp. 7–13.)  Specifically, she asserts Northwestern Mutual's "negligence and failure to exercise due care created the very controversy it now seeks to evade."  (*Id.* p. 7.)  She argues the company is not entitled to discharge because she has potential claims against it for negligence or breach of duty for processing the beneficiary change without additional verification after it was put on notice

10

of alleged elder abuse and fraud—especially given the Insured's lack of capacity, which was clear from the circumstances of the October 28, 2024 phone call. (*See id.* pp. 9–11.) She supports her allegations with Northwestern Mutual's policies and records. (*See id.* pp. 10–11.) She also invokes similar facts to question Northwestern Mutual's good faith. (*See id.* pp. 13–24.)

Northwestern Mutual contends that Defendant Rosary Liotta Adler's opposition was untimely filed and she did not raise any of these allegations as counterclaims, making her argument on this point unavailing. (*See* Reply pp. 5–6.) Northwestern Mutual also argues that, even notwithstanding those issues, Defendant Rosary Liotta Adler has no viable independent claims against it because it owes her no duties, and because it was not negligent to approve the beneficiary change when its internal review teams reviewed the circumstances and determined the Insured acted competently. (*See id.* pp. 5–11.)

Although Defendant Rosary Liotta Adler's motion was untimely, the undersigned evaluates the merits of her arguments for purposes of this recommendation and finds them insufficient to deny interpleader relief, even if the motion had been timely. Based on this analysis, the undersigned concludes that Defendant Rosary Liotta Adler does not have viable independent claims against Plaintiff and respectfully ecommends that the Court discharge Northwestern Mutual.

Rosary Liotta Adler equivocates on what her claims against Northwestern Mutual may actually be, which only compounds the fact that she failed bring any counterclaims by the parties' deadline of December 8, 2025.[2] (*See* Opp. p. 4) ("[Northwestern Mutual's] conduct *may* give rise

---

[2] Defendant Rosary Liotta Adler suggests she will amend her pleadings to assert counterclaims. (Dkt. No. 47 p. 8.) While that motion is not properly before the Court, any request to amend would have to be made pursuant to Federal Rule of Civil Procedure 15(a)(2), as the parties' proposed deadline for amendment without leave has passed.

to independent liability *for among other things* negligence and breach of duty") (emphasis added). At argument, she asserted—without support—that Northwestern Mutual breached an alleged duty to a policyholder under New York law, and asserted—again without support—that this duty extends to the beneficiary of the policy. (Feb. 17 Tr. at 8:1–6; Opp. pp. 8–9.)

To the contrary, Northwestern Mutual cannot be independently liable under a breach of duty theory because there is no fiduciary or other special relationship between the company and Defendant Rosary Liotta Adler that would give rise to a duty under New York law.[3] *Cf. Lawless v. Hartford Fin. Servs. Grp. Inc.*, 07-CV-4413, 2010 WL 5014390, at *8 (E.D.N.Y. Dec. 3, 2010) (collecting cases and holding any relationship between policyholder and insurance company is contractual, not fiduciary). Because the relationship between the Insured and the Northwestern Mutual is contractual, it is measured by the terms of the policy. *Id.* Defendant Rosary Liotta Adler does not claim breach of contract. But even if she did, under the terms of the policy, the Insured could change the beneficiary at any time. (*See* Reply Ex. G, Life Insurance Policy, Dkt. No. 49-7 § 8.2 (describing terms by which policy owner may name and change beneficiaries of death proceeds).) When he did so, Defendant Rosary Liotta Adler no longer had any rights in the contract. Finally, Defendant Rosary Liotta Adler's invocation of Northwestern Mutual's policies and procedures is inapplicable, since those policies protect the *insurer*, not the beneficiaries. *See Transamerica Fin. Life Ins. Co. v. Simmonds*, 873 N.Y.S.2d 238, at *6 (Sup. Ct. 2008) ("It is well settled that 'the formal procedures for a change in beneficiary are for the benefit of the insurer.'") (quoting *Kornacki v. Mut. Life Ins. Co. of N.Y.*, 600 N.Y.S.2d 788, 848–49 (1993)).

---

[3] Because Northwestern Mutual invokes the Court's diversity jurisdiction (Compl ¶ 16–17), any common law claims—including Defendant Rosary Liotta Adler's allegations of negligence and breach of duty—are evaluated under New York law. *See, e.g., Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state.")

With respect to negligence, the undersigned finds that whether or not a duty of care existed, the record before the Court on this motion establishes that Northwestern Mutual acted with reasonable care to determine whether the Insured willingly and competently changed his beneficiary. *See, e.g.*, *Cheeseboro v. Little Richie Bus Serv., Inc.*, 254 F. Supp. 3d 485, 490 (E.D.N.Y. 2017) (identifying elements of negligence under New York law, including duty of reasonable care owed by tortfeasor to injured party) *aff'd*, 722 F. App'x 107 (2d Cir. 2018). It is undisputed that Northwestern Mutual and its representatives flagged their concerns with the dueling allegations of elder abuse and consulted with the company's SIU to ensure policies were followed. The company representative asked Defendant Esther Adler O'Keefe to send the power of attorney document during the call. Northwestern Mutual then reviewed the information available, including call transcripts and emails, referred the case to its SIU, and only allowed the beneficiary change to proceed after receiving the Insured's most recent power of attorney. The company has also refused to pay the death benefits of the policy without the Court's guidance. *See supra* pp. 2–4; (*see also* Reply Exs. A–G.) The undersigned has found no legal authority to support a claim of negligence under these circumstances.[4] *Cf. Tang v. Shell Chem. Co.*, 317 F. App'x 660, 661–62 (9th Cir. 2009) (homeowner insurance company's denial of coverage was not objectively unreasonable to sustain negligence claim under Arizona law when insurer promptly opened claim file and hired third-party to inspect property).

The undersigned also finds Defendant Rosary Liotta Adler's allegations insufficient to support a finding of bad faith. Courts in this Circuit have held that mere negligence is not sufficient

---

[4] To the extent she raises them at all, the undersigned declines to address Defendant Rosary Liotta's allegations of fraud and abuse. Any facts she might invoke to support them describe conduct by parties other than Northwestern Mutual. Thus, they are irrelevant for purposes of interpleader.

to establish bad faith in this context; an interpleader plaintiff must have committed conduct that rises to wrongful intent or willful misconduct. *See William Penn*, 569 F. Supp. 2d at 362 ("[M]ere negligence on the part of the stakeholder does not bar interpleader, even if the controversy has resulted quite directly and foreseeably from that negligence.") (citing *Royal Sch. Lab'ys, Inc. v. Town of Watertown*, 358 F.2d 813, 814–17 (2d Cir. 1966). Courts find bad faith where interpleader plaintiff intentionally failed to comply with a court order or where the plaintiff was "completely controlled by one of the interpleaded defendants, suggesting only an illusory concern about competing claims." *JP Morgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 272 (S.D.N.Y. 2024) (collecting cases); *see also Wells v. Bank of N.Y. Co.*, 694 N.Y.S.2d 570, 580 (Sup. Ct. 1999) ("Neither a lapse of 'wary vigilance' nor 'suspicious circumstances which might well have induced a prudent banker to investigate' constitute an allegation of bad faith.") (quoting *Prudential–Bache Sec., Inc. v. Citibank, N.A.*, 536 N.E.2d 1118, 1125 (1989)). Those circumstances are not alleged here. As explained above, Northwestern Mutual acted reasonably. There is no support to claim they were even negligent, and certainly not that they are engaging in wrongful intent or willful misconduct. *Supra* p. 13. Thus, the undersigned finds interpleader relief is appropriate. *See Windmill Distrib. Co. L.P. v. Jaigobind*, 23-CV-1407, 2023 WL 4565402, at *5 (E.D.N.Y. May 11, 2023) (granting interpleader where there was no indication stakeholder acted in bad faith).

III.    **Attorneys' Fees & Costs**

Attorneys' fees and costs may be awarded to an innocent stakeholder who successfully initiates an interpleader action. *Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989). Such an award is left to the district court's discretion. *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965). Courts in this Circuit have exercised their discretion not

14

to award attorneys' fees in interpleader actions where the expenses incurred do not exceed those that are part of the ordinary course of business. *Travelers Ins. Co. v. Est. of Garcia*, 00-CV-2130, 2003 WL 1193535, at *4 (E.D.N.Y. Feb. 4, 2003); *see also Israel*, 354 F.2d at 490 ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader."); *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 204 F.R.D. 47, 49 (S.D.N.Y. 2001) ("[M]inor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business.").

Courts have generally adopted the view that "[c]onflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates in its discharge. Accordingly [such actions are] brought primarily in the company's own self-interest." *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y. 1977); *see also Com. Union Life Ins. Co. of N.Y. v. Almonor*, 98-CV-3649, 1999 WL 292562, at *1 (S.D.N.Y. 1999) (concluding that "[t]he ordinary cost of doing business in the life insurance industry must reflect the need for interpleader actions in some cases"). Indeed, "courts in this Circuit have typically declined to award insurance companies attorneys' fees and costs in interpleader actions." *Feehan v. Feehan*, 09-CV-7016, 2011 WL 497852, at *6 (S.D.N.Y. Jan. 10, 2011) (collecting cases), *report and recommendation adopted*, 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011).

Here, Northwestern Mutual has not identified the amounts expended in attorneys' fees and costs, nor whether they exceed ordinary business costs. Instead, it asks that it be granted leave to file a detailed accounting following the Court's order on its motion. (Mot. pp. 6–7.) As this is an

15

interpleader action brought by an insurance company, the undersigned finds it unlikely that Northwestern Mutual's fees and costs exceed those incurred in the ordinary course of business. But the Court cannot definitively reach that conclusion solely on the record before it and without reviewing counsel's explanation supporting any fee request.

Accordingly, the undersigned recommends that the Court grant Northwestern Mutual an opportunity to file a formal fee application. That application should explain "how the expenses incurred in filing [this] interpleader action in any way exceeded the ordinary cost of doing business as an insurance company." *Feehan*, 2011 WL 497852, at *8. It should also include the necessary supporting documentation required to award fees in this Circuit, including contemporaneous time records. *See, e.g.*, *Morales v. Fine Design Masonry, Inc.*, 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024).

**CONCLUSION**

For the foregoing reasons, the undersigned respectfully recommends that the Court grant Northwestern Mutual's motion and enter an order directing Northwestern Mutual to deposit the Insured's life insurance policy proceeds into the Court's registry within 14 days. Once those funds have been deposited, the undersigned recommends that the Court enter an order (i) permanently enjoining and restraining Defendants from commencing or further prosecuting other proceedings in any state or federal court in connection with the policy benefits; (ii) discharging Northwestern Mutual from all liability in connection with, arising out of, or relating to this action, the policy, and the policy benefits; and (iii) dismissing Northwestern Mutual from this action with prejudice. The undersigned also respectfully recommends that the Court grant Northwestern Mutual's request to make a formal fee application.

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed within 14 days of service

of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also*

Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time

to file objections must be directed to Judge Komitee.  Failure to file objections within this period

designating the particular issues to be reviewed waives the right to appeal the district court's order.

*See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP v. Atkinson,*

*Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party

[forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the

party fails to file timely objections designating the particular issue."); *Thomas v. Arn*, 474 U.S.

140 (1985) (finding Federal Magistrates Act does not forbid court of appeals from adopting rule

conditioning appeal from district court's judgment that adopts magistrate judge's recommendation

upon filing of objections to magistrate judge's report identifying those issues on which further

review is desired).

       **SO ORDERED.**

Dated: Brooklyn, New York
       March 24, 2026

          /S/  *SETH D. EICHENHOLTZ*
          SETH D. EICHENHOLTZ
          United States Magistrate Judge
          Eastern District of New York